THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

YONKERS RACING CORPORATION,
a New York corporation,

               Plaintiff,

vs.

ARCH INSURANCE COMPANY, a Missouri
corporation,

               Defendant.

—————————————————————x

## 08 CIV. 2346

Case No. 08 CV _____

## JUDGE KARAS

ECF Case

## COMPLAINT

Plaintiff Yonkers Racing Corporation ("Yonkers"), for its complaint against Arch Insurance Company ("Arch"), states as follows:

### I. Nature of Claim

1.     Yonkers seeks declaration of its rights and obligations under a commercial general liability policy issued by Arch. As described in detail herein, Arch wrongfully refuses to cover and defend Yonkers in a personal liability claim emanating out of an incident on the property for which Arch provides coverage.

### II. Parties

2.     Plaintiff Yonkers is incorporated under the laws of the State of New York with its principal place of business in Yonkers, New York.

3.     Defendant Arch Insurance Company is incorporated under the laws of the State of Missouri with its principal place of business in Kansas City, Missouri.

### III.  Jurisdiction and Venue

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction insofar as it involves citizens of different States and the amount in controversy exceeds $75,000 as set forth herein.

5.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Yonkers' claims occurred in this District.

### IV.  Substantive Factual Allegations

**A.      The Policy**

6.      Arch issued to Tishman Construction Corporation of New York ("Tishman") a Commercial General Liability Policy, bearing Policy No. 11GPP2056800, for the policy period from September 9, 2005 to March 9, 2007 (the "Policy").  The Policy has an aggregate limit of liability of $4 million.  A true and correct copy of the Policy is attached hereto as Exhibit 1.

7.      Yonkers is a "Named Insured" under the Policy.  Specifically, the Named Insured Endorsement provides that "[i]t is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured: . . . Yonkers Racing Corporation. . ."

8.      Paragraph 1(a) of Section I of the Policy provides that Arch "will pay those sums that [Yonkers] becomes legally obligated to pay as damages because of 'bodily injury' or property damage' to which this insurance applies.  **[Arch] has the right and duty to defend [Yonkers] against any 'suit' seeking those damages.**"  (emphasis added)

9.      Paragraph 3 of Section V of the Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

2

10.    Paragraph 18 of Section V of the Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies are alleged."

11.    The Limitation of Coverage to Designated Premises or Project Endorsement (the "Premises Limitation Endorsement") states as follows:

**Schedule**

**Premises:**
THE EMPIRE CITY CASINO AT YONKERS RACEWAY, TISHMAN PROJECT NUMBER C-0199, LOCATED AT 810 CENTRAL AVENUE, YONKERS, NEW YORK, 10704; AS FURTHER DEFINED BY THE SITE PLAN MAP ON FILE WITH THE COMPANY
* * *
This insurance applies only to "bodily injury" . . . arising out of:
1.   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2.   The project shown in the Schedule.

12.    Accordingly, the Policy provides a defense and indemnity to Yonkers for claims alleging bodily injury arising out of the Empire Casino project.

**B.    The Hazel Claim**

13.    On October 22, 2006, Jane Hazel injured herself when she tripped over construction debris and reportedly sustained severe personal injuries, including multiple fractures of her wrist, head injuries, a concussion, and hearing loss.

14.    On December 27, 2006, Hazel and her husband, Neil Hazel, filed a Notice of Intent to file a Claim against the State of New York for bodily injury resulting from the October 22, 2006 incident, styled *Jane Hazel & Neil Hazel v. The State of New York*, OAG No. 07-051599-O (Attached hereto as Exhibit 2).

15.    On July 30, 2007, Yonkers provided Arch notice of a potential claim by Hazel. At this time, Yonkers was unaware that Hazel already had filed a Notice of Intent to file a Claim with the State of New York.  (Attached hereto as Exhibit 3).

3

16.    By letter dated December 12, 2007, the Office of the Attorney General of the

State of New York advised Yonkers that it intended to preserve and invoke its statutory right to

indemnification pursuant to Section 2836-4.6 of the New York Code of Rules and Regulations

("NYCRR").

17.    NYCRR Section 2836-4.6 states as follows:

> As a condition to the issuance and acceptance of any video gaming
> agent license, each video lottery gaming agent shall agree, by
> separate agreement or otherwise, to:
>
> (a) indemnify and hold harmless the State, the division and any of
> its employees from any and all damages, claims for damages or
> suits that may arise or occur directly or indirectly as a result of any
> operation carried on, under and pursuant to said video lottery
> gaming agent license;
>
> (b) release the State, the division and any of its employees from
> any and all claims, damages and/or rights of action which shall
> accrue to the video lottery gaming agent or any of its employees
> that may arise or occur directly or indirectly as a result of any
> operation carried on, under or pursuant to said license; and
>
> (c) at his or her own expense, shall defend any and all suits against
> the State which may be brought by third parties as a result of any
> operation carried on pursuant to or in accordance with the terms of
> such license.

**C.    Yonkers Request for Coverage and a Defense**

18.    Despite Yonkers' numerous attempts to contact Arch about the Hazel claim, Arch

has refused to provide Yonkers with any coverage analysis or a defense.

## COUNT I
## DECLARATORY JUDGMENT -- DEFENSE

19.    Yonkers repeats and realleges each and every allegation contained in paragraphs 1

through 18 above, as set forth fully herein.

20.    Arch must provide Yonkers a defense for the Hazel claim if any allegations in the

claim bring the claim even potentially within coverage.

4

21.     Because the Hazel claim alleges bodily injury as a result of negligence at the Empire Casino, the claim clearly implicates coverage.

22.     Despite Arch's clear duty to defend Yonkers, it refuses even to acknowledge Yonkers' notice of claim.

WHEREFORE, Yonkers respectfully requests that this Court enter an Order that:

(1)     Arch must provide Yonkers an on-going defense for the Hazel claim;

(2)     Arch must reimburse Yonkers for all costs and expenses incurred in defending the Hazel claim through the date that Arch takes over the defense;

(3)     Provides Yonkers such other and further relief as this Court deems just and equitable.

## COUNT II
## DECLARATORY JUDGMENT – INDEMNITY

23.     Yonkers repeats and realleges each and every allegation contained in paragraphs 1 through 18 above, as set forth fully herein.

24.     The Hazel claim makes a bodily injury claim against Yonkers that falls within the scope of coverage of the Policy.

25.     Arch wrongfully denied its obligation under the Policy to cover Yonkers for the Hazel claim.

WHEREFORE, Yonkers respectfully requests that this Court enter an Order that:

(1)     The Policy covers any and all of Yonkers' liability in connection with Hazel claim; and

(2)     Provides Yonkers such other and further relief as this Court deems just and equitable.

## JURY DEMAND

26.    Plaintiff demands a trial by jury.


DATED:  March 6, 2008


Respectfully submitted,

YONKERS RACING CORPORATION


By: _____
One of its attorneys


Stephen J. Rosenfeld
Keith E. Allen
**MANDELL MENKES LLC**
333 West Wacker Drive, Suite 300
Chicago, Illinois  60606
(312) 251-1000


-    and  -


Vincent Crowe
Daniel W. Morrison
**BLEAKLEY PLATT & SCHMIDT**
One North Lexington Avenue
White Plains, New York 10601
(914) 287 6147

168200

6

# EXHIBIT

# 1

Policy Number: **11GPP2056800**

MARSH USA, INC
1166 AVENUE OF THE AMERICAS
40TH FLOOR
NEW YORK NY 10036

ATTACHED ARE DOCUMENTS FOR THE FOLLOWING NAMED INSURED:

TISHMAN CONSTRUCTION CORPORATION OF
NEW YORK
666 FIFTH AVENUE
NEW YORK NY 10103-0256

12-08-05

PRODUCER COPY

# POLICYWRITING INDEX

ARCH INSURANCE COMPANY

| CUSTOMER ID | POLICY NUMBER 11GPP2056800 | PREVIOUS POLICY NUMBER NEW | EFFECTIVE DATE 09-09-2005 | EXPIRATION DATE 03-09-2007 |
|---|---|---|---|---|

NAMED INSURED    TISHMAN CONSTRUCTION

| MISCELLANEOUS INFORMATION | | TRANSACTION INFORMATION | |
|---|---|---|---|
| BILL TYPE | Broker Billed | TRANS. TYPE | NEW BUSINESS |
| BILL PLAN | Variable (Max 12 Installments) | TRANS. SEQ. # | 001 |
| OPERATOR I.D. | MVANKLEEK | DATE PROCESSED | 12-08-05 |
| U/W I.D. | | TRANS. DATE | 09-09-05 |
| PROGRAM CODE | | ENDORSEMENT # | |
| SIC CODE | | CANC/REIN REASON | |
| OFFICE CODE | | | |
| OFFICE NAME | | | |
| WORK PHONE # | (212)708-6738 | | |
| OTHER PHONE # | | | |
| NAME OF CONTACT | ROBERT JOYCE | | |

LINE OF BUSINESS/ COMMISSIONS:

| LINE OF BUSINESS | COMMISSION % |
|---|---|
| GENERAL LIABILITY | NIL |

|  |  |  |
|---|---|---|
| FULL ANNUAL PREMIUM | $ | |
| BILLED PREMIUM | $ | |

| NAMED INSURED MAILING ADDRESS | AGENT INFORMATION | CODE | 00357 |
|---|---|---|---|
| TISHMAN CONSTRUCTION CORPORATION OF NEW YORK 666 FIFTH AVENUE NEW YORK                NY        10103-0256 | MARSH USA, INC 1166 AVENUE OF THE AMERICAS 40TH FLOOR NEW YORK                                    NY        10036 | | |

### ASSEMBLY INFORMATION

### STAMPS/ STICKERS

### SPECIAL INSTRUCTIONS

### MAILING INSTRUCTIONS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of any accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours, principal, partner, owner, or the person or persons responsible for insurance matters listed below shall have received notice from said agent, servant, employee or any other person.

Name: ROBERT JOYCE, TISHMAN RISK MANAGEMENT OR TISHMAN PROJECT EXECUTIVE

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____
Authorized Representative

00 ML0020 00 11 03

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNINTENTIONAL ERRORS AND OMISSIONS ENDORSEMENT**

It is hereby agreed that your failure to disclose all hazards existing as of the inception date of this policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or omission is not intentional or grossly negligent.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____
**Authorized Representative**

00 ML0021 00 11 03                                      Page 1 of 1

PRODUCER COPY

IL 09 85 01 03

POLICY NUMBER: 11GPP2056800

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

### SCHEDULE*

Terrorism Premium (Certified Acts) $

Additional information, if any, concerning the terrorism premium:

---

\*    Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

© ISO Properties, Inc., 2003             □

PRODUCER COPY

**Policy Number**
**11GPP2056800**

### COMMON POLICY DECLARATIONS

## ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date: 09-09-05

12:01 A.M., Standard Time

Agent Name    MARSH USA, INC

Agent No.    00357

| Item 1. | Named Insured and Mailing Address | Agent Name and Address |
|---|---|---|
| TISHMAN CONSTRUCTION CORPORATION OF NEW YORK<br>666 FIFTH AVENUE<br>NEW YORK NY 10103-0256 | | MARSH USA, INC<br>1166 AVENUE OF THE AMERICAS<br>40TH FLOOR<br>NEW YORK NY 10036<br><br>Agent No. 00357 |

| Item 2. | Policy Period | From: 09-09-2005 | To: 03-09-2007 |
|---|---|---|---|
| | at 12:01 A.M., Standard Time at your mailing address shown above. | | |

**Item 3.**    Business Description:    GENERAL CONTRACTOR
Form of Business:    CORPORATION

**Item 4.**    In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | NOT COVERED |
| Commercial General Liability Coverage Part | $ |
| Commercial Crime Coverage Part | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | NOT COVERED |
| Commercial Garage Coverage Part | NOT COVERED |
| | |
| | |
| | |
| | |
| **Total Policy Premium** | $ |

**Item 5.**    Forms and Endorsements

Forms(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned:

Date: 12-08-05 _____    By: _____
                                           Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

**FAIC-SKLBUS-CPD (6/01)**

PRODUCER COPY

# ARCH
# INSURANCE COMPANY

### 3100 BROADWAY
### KANSAS CITY, MISSOURI  64111-2479

### Incorporated December 15, 1971

President

Secretary

Policy Number
11GPP2056800

SCHEDULE OF FORMS AND ENDORSEMENTS

# ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA, INC

Agent No.   00357

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| 00 ML0020 00 | 11-03 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT |
| 00 ML0021 00 | 11-03 | UNINTENTIONAL ERRORS & OMISSIONS  ENDT |
| IL 09 85 | 01-03 | DISCLOSURE PURSUANT/TERROR INS ACT-2002 |
| FAIC-SKLBUS-CPD | 06-01 | COMMON POLICY DECLARATIONS |
| FAIC-SKLBUS-FE | 06-01 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| FAIC-SKLBUS-SL | 06-01 | SCHEDULE OF LOCATIONS |
| INSTALL-FORM | 01-02 | INSTALLMENT SCHEDULE |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 23 | 04-98 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 85 | 04-98 | NEW YORK CHANGES-CALCULATION OF PREMIUM |
| IL 02 68 | 02-05 | NEW YORK CHANGES-CANC & NONRENL |
| 00 MLT0027 00 | 01-05 | TERRORISM COVERAGE DISCLOSURE NOTICE |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| FAIC-SKLBUS-CGLDEC | 06-01 | COMM GENERAL LIABILITY COVERAGE SUPP DEC |
| FAIC-SKLBUS-GLE | 06-01 | NAMED INSURED ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | ASSIGNMENT CONSENT ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | ADDITIONAL DEFINITIONS ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | CANCELLATION PROVISION ENDORSEMENT |
| FAIC-SKLBUS-SCGL | 06-01 | COMM GENERAL LIABILITY COVERAGE SCHEDULE |
| CG 00 01 | 10-01 | COMMERCIAL GENERAL LIABILITY COV FORM |
| 00 GL0045 00 | 12-03 | GENERAL LIABILITY ASBESTOS EXCLUSION |
| 00 CGL0031 33 | 04-03 | DED LIAB COV (ALAE W/IN DED PAID BY YOU) |
| 00 CGL0035 33 | 12-03 | FELLOW EMPLOYEE ENDORSEMENT |
| 00 CGL0042 00 | 09-03 | NON-OWNED WATERCRAFT ENDORSEMENT |
| 00 ML0022 00 | 11-03 | ADDL INSURED - AUTO STATUS CONST-DESIGN |
| CG 01 04 | 12-01 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 | 09-99 | NY CHANGES-COMM GEN LIAB COV FORM |
| CG 00 62 | 12-02 | WAR LIABILITY EXCLUSION |
| CG 00 67 | 03-05 | EXCL-VIOL OF STATS THAT GOVERN EMAIL FAX |
| CG 21 44 | 07-98 | LIMIT OF COV TO DESIGNATED PREM OR PROJ |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 53 | 01-96 | EXCL-DESIGNATED ONGOING OPERATIONS |
| CG 21 65 | 09-99 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 70 | 11-02 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 22 79 | 07-98 | EXCL-CONTRACTORS-PROF LIAB |
| CG 24 04 | 10-93 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 26 21 | 10-91 | NY CHANGES - TRANSFER OF DUTIES |
| 00 ML0207 00 | 10-03 | PRODUCTS-COMPLETED OPS HAZARD EXTENSION |

FAIC-SKLBUS-FE (6/01)

Policy Number
**11GPP2056800**

### SCHEDULE OF LOCATIONS

# ARCH INSURANCE COMPANY

Named Insured    ⁓TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time
Agent No.   00357

Agent Name   MARSH USA, INC

| Loc. No. | Bldg. No. | Designated Locations (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | 810 CENTRAL AVENUE, YONKERS, NY 10704 | |

FAIC-SKLBUS-SL (6/01)

Policy Number
**11GPP2056800**

INSTALLMENT SCHEDULE

# ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA, INC

Agent No.   00357

FOR INSTALLMENTS, PLEASE REFER TO THE PREMIUM INVOICES
WHICH ARE MAILED SEPARATELY.

| DUE | PREMIUM | SURCHARGE | REVISED INSTALLMENT TOTAL |
|-----|---------|-----------|---------------------------|
|     |         |           |                           |

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

**INSTALL-FORM (01/02)**

PRODUCER COPY

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

    Copyright, Insurance Services Office, Inc., 1998

PRODUCER COPY

INTERLINE
IL 00 23 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 2 □

PRODUCER COPY

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

IL 00 23 04 98 ☐

PRODUCER COPY

INTERLINE
IL 01 85 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NEW YORK CHANGES - CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

**A.** For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in paragraph B., the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**B.** For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

1. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in paragraphs 2. or 3. apply.

2. The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

    a. After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

    b. A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

    c. A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

3. If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rate and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

Copyright, Insurance Services Office, Inc., 1997

PRODUCER COPY

IL 02 68 02 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect**

   a. **60 Days Or Less**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph A.2.a.(2) below.

   (2) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

   (a) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

   (d) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   (e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   (f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

PRODUCER COPY

(g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b. **For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph A.2.a.(2) above, provided:

(1) We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the **Cancellation** Common Policy Condition:

7. If one of the reasons for cancellation in Paragraphs **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

C. The following Conditions are added:

1. **Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph C.3. below.

2. **Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

3. **Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs C.1. and C.2. above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

© ISO Properties, Inc., 2004
IL 02 68 02 05

PRODUCER COPY

d. If we violate any of the provisions of Paragraphs **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

    (1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

    (2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

    (1) Upon expiration of the 60 day period; or

    (2) Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part or the Farm Coverage Part is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

    a. The policy is issued or issued for delivery in New York State covering property located in this state; and

    b. The policy insures:

        (1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

        (2) For loss of or damage to personal property other than farm personal property or business property; or

        (3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

    c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

    2. **Procedure And Reasons For Cancellation**

    a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

        (2) 30 days before the effective date of cancellation if we cancel for any other reason.

    b. But if this policy:

        (1) Has been in effect for more than 60 days; or

        (2) Is a renewal of a policy we issued:

    we may cancel this policy only for one or more of the following reasons:

        (1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

        (2) Conviction of a crime arising out of acts increasing the risk of loss;

        (3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

        (4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

© ISO Properties, Inc., 2004

PRODUCER COPY

(5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

    (a) Issued the policy; or

    (b) Last voluntarily renewed the policy;

(6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

(7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

  **a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

(1) The policy limits be changed; or

(2) Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

  **b. Nonrenewal**

If, as allowed by the laws of New York State, we:

(1) Do not renew this policy; or

(2) Condition policy renewal upon:

    (a) Change of limits; or

    (b) Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

    (a) At least 45 days; but

    (b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the Farm Property — Other Farm Provisions Form — Additional Coverages, Conditions, Definitions and the Commercial Property Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in E.1. and E.2. above supersede any contrary provisions in this policy including this endorsement.

If the notice in E.1. or E.2. above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the Commercial Property Coverage Part and the Farm Coverage Part:

Paragraphs f. and g. of the **Mortgageholders Condition** are replaced by the following:

  **f. Cancellation**

(1) If we cancel this policy, we will give written notice to the mortgageholder at least:

    (a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    (b) 30 days before the effective date of cancellation if we cancel for any other reason.

© ISO Properties, Inc., 2004

IL 02 68 02 05    □

PRODUCER COPY

(2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

    (a) The effective date of cancellation of the insured's coverage; or

    (b) 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

(1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

    (a) The expiration date of the policy; or

    (b) 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:
Commercial General Liability Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

PRODUCER COPY

# TERRORISM COVERAGE DISCLOSURE NOTICE

### TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

The Terrorism Risk Insurance Act of 2002 established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act of 2002, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

**Your premium <u>will</u> include the additional premium for terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. **The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.**

### DISCLOSURE OF PREMIUM

Your premium for terrorism coverage is: $
(This charge/amount is applied to obtain the final premium.)

**You may choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage.** If you chose to accept this offer, this form does not have to be returned.

### REJECTION STATEMENT

| I hereby decline to purchase coverage for certified acts of terrorism. I understand that an exclusion of certain terrorism losses will be made part of this policy. |
|---|

 

| | Tishman Construction Corporation of New York |
|---|---|
| _____ | _____ |
| Policyholder/Legal Representative/Applicant's Signature | Named Insured |
| | |
| _____ | _____ |
| Print Name of Policyholder/Legal Representative /Applicant | Arch Insurance Company |
| | Insurance Company |
| | |
| Date: _____ | Policy Number: 11GPP2056800 |

00 MLT0027 00 01 05

**Policy Number**
**11GPP2056800**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS
# ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date:   09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA,  INC

Agent No.   00357

**Item 1.  Business Description:** GENERAL  CONTRACTOR

**Item 2.  Limits of Insurance**

| Coverage | | Limit of Liability | |
|---|---|---|---|
| Aggregate Limits of Liability | $ | 4,000,000 | Products/Completed Operations Aggregate |
| | $ | 4,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A – Bodily Injury and Property Damage Liability | $ | 2,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ | 1,000,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B – Personal and Advertising Injury Liability | $ | 2,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C – Medical Payments | | 10,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 3.  Retroactive Date**

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the

Retroactive Date, if any, shown here: _____

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.  Form of Business and Location of Premises**

Forms of Business: CORPORATION
Location of All Premises You Own, Rent or Occupy:
   **See Schedule of Locations**

**Item 5.  Forms and Endorsements**

Form(s) and Endorsement(s) made a part of this policy at time of issue:
   **See Schedule of Forms and Endorsements**

**Item 6.  Premiums**

| | |
|---|---|
| Coverage Part Premium: | $ |
| Other Premium: | |
| Total Premium: | $ |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
**FAIC-SKLBUS-CGLDEC (6/01)**

Policy Number
11GPP2056800

ENDORSEMENT

## ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time

Agent Name  MARSH USA, INC

Agent No.    00357

### NAMED INSURED ENDORSEMENT

It is hereby agreed that Item 1. of the Declarations is amended to include the following entities as a Named Insured:

1. The Named Insured is hereby amended to include:
   a. Tishman Construction Corporation of New York (as sponsor),
   b. YRL Associates L.P.,
   c. Rooney Associates,
   d. Yonkers Racing Corporation,
   e. City of Yonkers Industrial Development Agency, and

2. All contractors, all tiers of contractors, each separate contractor of sponsor, or others to whom sponsor contracts to furnish insurance under the Contractor Controlled Insurance Program for this project.

3. Excluding vendors, suppliers, material dealers, truckers, haulers and others who transport, pick-up, deliver or carry materials, personnel, parts or equipment or any other items or persons to or from the project site.

4. Any other entities not accepted into the Contractor Controlled Insurance Program for this Project.

FAIC-SKLBUS-GLE (06/01)

**Policy Number**
**11GPP2056800**

ENDORSEMENT

# ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA, INC

Agent No.    00357

### ASSIGNMENT CONSENT ENDORSEMENT

It is agreed that this policy is issued at the direction of Sponsor, who shall be solely responsible for payment of premium. Insureds having assigned the return premiums, premium discounts, and dividends, if any, to the Sponsor, then such shall be payable to the Sponsor and we consent to such assignment of interest.

FAIC-SKLBUS-GLE (06/01)

**Policy Number**
**11GPP2056800**

**ENDORSEMENT**

## ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time

Agent Name  MARSH USA, INC

Agent No.    00357

ADDITIONAL DEFINITIONS ENDORSEMENT

As needed and as mutually agreeable:  Applicable to Off-site locations
for staging, project management, or other incidental operations
require prior approval by carrier.

FAIC-SKLBUS-GLE (06/01)

Policy Number
11GPP2056800

ENDORSEMENT

## ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time

Agent Name  MARSH USA, INC

Agent No.   00357

### CANCELLATION PROVISION ENDORSEMENT

The company agrees to provide continuous coverage to the Insured for the term of this project, and therefore waives its rights of cancellation except for (1) non-payment of premium by the insured, (2) non-compliance with safety/loss control recommendations, or (3) any other statutorily permitted reason.

(1) Non-payment of premium shall be deemed to have occurred if payment is not received by the company in accordance with the agreed payment schedule.

(2) Non-compliance shall be deemed to have occurred when (a) the insured fails to comply with reasonable job safety recommendations and/or legally mandated safety standards; or (b) the insured fails to correct hazards that present an undue exposure to employees and/or the public.

The company will provide ten (10) days written notice for non-payment of premium, thirty (30) days written notice for non-compliance with safety recommendations, and ninety (90) days written notice for any statutorily permitted reason other than (1) and (2), and as further provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, via certified mail to:

Sponsor:   Tishman Construction Corporation of New York
666 Fifth Avenue
New York NY  10103-0256

FAIC-SKLBUS-GLE (06/01)

**Policy Number**
**11GPP2056800**

COMMERCIAL GENERAL LIABILITY COVERAGE SCHEDULE

# ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date:  09-09-05
12:01 A.M., Standard Time
Agent No.    00357

Agent Name  MARSH USA, INC

| Item 5.  Location of Premises |
| --- |

Location of All Premises You Own, Rent or Occupy:
    **See Schedule of Locations**

| Code No. 15350 | Premium Basis WC-RENUMERATION/PER 100 | Premises/Operations | |
| --- | --- | --- | --- |
| Location | Exposure $    25,356,650 | Rate | Premium |
| Classification: COMPOSITE RATE | | Products/Completed Operations | |
| | | Rate | Premium INCL |
| Code No. | Premium Basis | Premises/Operations | |
| Location | Exposure | Rate | Premium |
| Classification: TERRORISM | | Products/Completed Operations | |
| | | Rate | Premium |
| Code No. | Premium Basis | Premises/Operations | |
| Location | Exposure | Rate | Premium |
| Classification: | | Products/Completed Operations | |
| | | Rate | Premium |
| Code No. | Premium Basis | Premises/Operations | |
| Location | Exposure | Rate | Premium |
| Classification: | | Products/Completed Operations | |
| | | Rate | Premium |

FAIC-SKLBUS-SCGL (6/01)

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

PRODUCER COPY

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

　　　© ISO Properties, Inc., 2000　　　CG 00 01 10 01　　☐

PRODUCER COPY

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

PRODUCER COPY

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

CG 00 01 10 01

PRODUCER COPY

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

PRODUCER COPY

CG 00 01 10 01     □

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

h. **War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

© ISO Properties, Inc., 2000

PRODUCER COPY

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

PRODUCER COPY

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

 © ISO Properties, Inc., 2000 □

PRODUCER COPY

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

PRODUCER COPY

CG 00 01 10 01    ☐

b. If a claim is made or "suit" is brought against any insured, you must:

  (1) Immediately record the specifics of the claim or "suit" and the date received; and

  (2) Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  (2) Authorize us to obtain records and other information;

  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

  (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

  (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

© ISO Properties, Inc., 2000

PRODUCER COPY

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

    © ISO Properties, Inc., 2000    CG 00 01 10 01    □

PRODUCER COPY

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

    © ISO Properties, Inc., 2000

PRODUCER COPY

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

PRODUCER COPY

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, re-conditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 © ISO Properties, Inc., 2000

PRODUCER COPY

b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

PRODUCER COPY

CG 00 01 10 01    ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ASBESTOS EXCLUSION**

This policy does not apply to:

Any claim, "suit," demand or loss that alleges "bodily injury," "property damage," or "personal and advertising injury," (including but not limited to, compliance with any request, demand, order, or statutory or regulatory requirement or any other action authorized or required by law) including any costs, fees, expenses, penalties, judgments, fines, or sanctions arising there from, which arises out of, or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means:

(1)     actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, or

(2)     the failure to warn, advise or instruct related to asbestos in any manner or form whatsoever, or

(3)     the failure to prevent exposure to asbestos in any manner or form whatsoever, or

(4)     the presence of asbestos in any place whatsoever, whether or not within a building or structure.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

Endorsement Effective Date:

00 GL0045 00 12 03                                                                              Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEDUCTIBLE LIABILITY COVERAGE

### (Allocated Loss Adjustment Expenses Within Deductible Paid by You)

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 12:01 A.M. standard time | 11GPP2056800 |
| Named Insured<br>TISHMAN CONSTRUCTION | Countersigned by |

(Authorized Representative)

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $ | per "claim" |
| | $ | per "occurrence" |
| Property Damage Liability | $ | per "claim" |
| | $ | per "occurrence" |
| Bodily Injury Liability and Property<br>Damage Liability Combined | $ | per "claim" |
| | $ | per "occurrence" |
| Personal and Advertising Injury | $ | per "claim" |
| | $ | per any one person or organization |
| Damage to Premises Rented to You (or Fire<br>Damage if indicated as such in your policy) | $ | per premises (or per fire if indicated<br>as such in your policy) |
| Medical Expenses | $ | per person |
| **Deductible Aggregate** | $ | _____ |

(If no entry appears in the Schedule above, information required to complete this endorsement will be shown in the Declarations as applicable to this Endorsement.)

00 CGL0031 33 04 03

Page 1 of 3

PRODUCER COPY

The Policy is changed as follows:

**I.    DEDUCTIBLE**

A.    Our obligation under the Policy to pay damages on behalf of any insured applies only to the amount of damages in excess of any deductible amounts stated in the above Schedule as applicable to such coverages.  The Limits of Insurance set forth in the Declarations applicable to this Endorsement for such coverages will be reduced by the amount of such deductible. The "Aggregate" Limits of Insurance stated in the Declarations of the Policy for such coverages shall be reduced by the application of such deductible amount.

B.    If the policy period is longer than one year, the Deductible Aggregate amount applies separately to each policy year. Each policy year begins with the inception or anniversary date of the policy and ends at the earlier of the next anniversary date or the expiration of the policy.

C.    The terms of this insurance, including those with respect to:

1.    Our right and duty to defend any "suit" seeking those damages; and

2.    Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.  Defense costs, however, will not be included in any deductible amount paid by you.

D.    The deductible amounts stated in the above Schedule on a "per claim" basis, a "per occurrence" basis, "per any one person or organization" basis, "per premises" (or "per fire" if indicated as such in your policy) basis and as an "Aggregate" apply as follows:

1.    **PER CLAIM BASIS**—if the deductible is on a "per claim" basis, the deductible amount applies:

a.    Under the Bodily Injury Liability or Property Damage Liability coverage, respectively:

(i)    To all damages because of "bodily injury" sustained by one person, or

(ii)    To all damages because of "property damage" sustained by one person or organization, as the result of any one "occurrence."

b.    Under Bodily Injury Liability and Property Damage Liability coverage combined, to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence."

c.    Under the Personal and Advertising Injury coverage, to all damages because of all "personal injury" and all "advertising injury" (or "personal and advertising injury" if defined as such in your policy) sustained by one person or organization.

2.    **PER OCCURRENCE BASIS** – if the deductible is on a "per occurrence" basis, the deductible amount applies:

a.    Under Bodily Injury Liability or Property Damage Liability Coverage, respectively:

(i)    To all damages because of "bodily injury" as the result of any one "occurrence", or

(ii)    To all damages because of "property damage" as the result of any one "occurrence"

regardless of the number of persons or organizations who sustain damages because of that "occurrence."

PRODUCER COPY

    b.   Under Bodily Injury Liability and Property Damage Liability Coverage combined, to all damages because of "bodily injury" and "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**3.**   **DEDUCTIBLE AGGREGATE**—If a "Deductible Aggregate" is shown in the above Schedule:

    a.   When as a result of the application of deductibles, the total of all deductibles paid by you exceeds the amount shown as "Deductible Aggregate" in the above Schedule, we will then pay for all damages that would otherwise be payable without applying any further deductibles, but the amount we will pay is limited as described under all provisions of the Policy applying to the Limits of Insurance.

    b.   The "Deductible Aggregate" amount applies separately to each Policy year. Each Policy year:

        (i)   begins with the inception or anniversary date of the Policy; and

        (ii)   ends at the next anniversary date or the expiration of the Policy.

## II.  ALLOCATED LOSS ADJUSTMENT EXPENSES

"Allocated Loss Adjustment Expenses" for claims within the Deductible amount shall be paid by you and shall reduce the Deductible amount stated in the above Schedule. After the Deductible amount has been exceeded by your payments of claims and related "Allocated Loss Adjustment Expenses", or after exhaustion of any Deductible Aggregate, we shall pay all "Allocated Loss Adjustment Expenses". "Allocated Loss Adjustment Expenses" shall not reduce the applicable Limit of Insurance shown in the policy.

"Allocated Loss Adjustment Expenses" is defined as those expenses under the "Supplementary Payments" section of the policy which we directly allocate to a particular claim or "suit". "Allocated Loss Adjustment Expenses", however, shall not include prejudgment interest, applicable interest, or defense costs.

## III.  OUR RIGHT TO REIMBURSEMENT

When we pay all or any part of any Deductible shown in the Schedule, you must promptly reimburse us for: a) the Deductible or that part of the Deductible amount paid by us, and b) all related "Allocated Loss Adjustment Expenses" within the Deductible amount we incur in accordance with Section II hereof.

If we require collateral or other security to secure deductible amounts and other obligations under the Deductible Liability Coverage Endorsement, you shall provide such collateral or other security in an amount and form as we may determine.

We will pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Upon notification of payment by us, you will promptly reimburse us for any such amounts that we have paid.

We may mutually agree upon a final payment amount to satisfy your present and future payment obligations under this Deductible Liability Coverage Endorsement. Payment by you of such amount will end your obligations to make payments to us under that endorsement.

All other terms, conditions and exclusions of the policy (including any other endorsements thereto) not inconsistent with the provisions of this endorsement remain in full force and effect.

PRODUCER COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FELLOW EMPLOYEE ENDORSEMENT – NEW YORK**

1.  Section II – Who Is An Insured – 2. a. (1)(a) is deleted and replaced by the following:

    (a)  To you , to your partners or members (if you are a partnership or joint venture) to your members (if you are a limited liability company), to a co-"employee" above the level of "supervisor" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

2.  "supervisor" means an "employee":

    (a)  to whom one or more "employees" directly reports; and

    (b)  to whom you have given the authority to direct the activities of other "employees".

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____

Authorized Representative

00 GL0035 33 12 03

Page 1 of 1

PRODUCER COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NON-OWNED WATERCRAFT ENDORSEMENT**

This endorsement makes the following modification to this insurance.

1.      Section I — Exclusions — g. (2) (a) is deleted and replaced with the following:

   (a)     Less than 75 feet long.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____

                                        Authorized Representative

00 GL0042 00 09 03                                                        Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED -- AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU – COMPLETED OPERATIONS – PRIMARY AND NON-CONTRIBUTORY ENDORSEMENT – DESIGNATED LOCATIONS**

This endorsement modifies insurance provided under the following:

Section II – Who is an Insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization is an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of:

    i)      "your work" at the location(s) designated below; or

    ii)     the "products-completed operations hazard."

Coverage afforded to these additional insured parties will be primary to, and non-contributory with, any other insurance available to that person or organization.

Location(s): THE EMPIRE CITY CASINO AT YONKERS RACEWAY PROJECT, TISHMAN PROJECT NUMBER C-0199, LOCATED AT 810 CENTRAL AVENUE, YONKERS, NEW YORK, 10704; AND APPLICABLE FOR ACCEPTED CONTRACTORS ONLY UNDER THE CONTRACTOR CONTROLLED INSURANCE PROGRAM FOR THIS PROJECT.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____
Authorized Representative

00 ML0022 00 11 03

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 01 04 12 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES - PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **b.** of the **Premium Audit** Condition **(Section IV)** is replaced by the following:

5. **Premium Audit**

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

B. Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

© ISO Properties, Inc., 2001
PRODUCER COPY

COMMERCIAL GENERAL LIABILITY
CG 01 63 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement of Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Copyright, Insurance Services Office, Inc., 1999

PRODUCER COPY

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph 1.a. of Section I - Coverage B - Personal And Advertising Injury Liability is replaced by the following:

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**C.** The following is added as Paragraph e. to the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition (Paragraph 2. of Section IV - Commercial General Liability Conditions):

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   e.  Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** The definition of "loading or unloading" in the Definitions Section does not apply.

Copyright, Insurance Services Office, Inc., 1999

CG 01 63 09 99 □

PRODUCER COPY

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2., Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. The following exclusion is added to Paragraph **2., Exclusions** of **Section I — Coverage B — Personal And Advertising Injury Liability:**

2. **Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

C. Exclusion **h.** under Paragraph **2., Exclusions** of **Section I — Coverage C — Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions of Section I — Coverage C — Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage A.

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

POLICY NUMBER: 11GPP2056800

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Premises:**

THE EMPIRE CITY CASINO AT YONKERS RACEWAY, TISHMAN PROJECT NUMBER C-0199, LOCATED AT 810 CENTRAL AVENUE, YONKERS, NEW YORK, 10704; AS FURTHER DEFINED BY THE SITE PLAN MAP ON FILE WITH THE COMPANY.

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

CG 21 44 07 98              Copyright, Insurance Services Office, Inc., 1997              Page 1 of 1

PRODUCER COPY

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98      Copyright, Insurance Services Office, Inc., 1997      Page 1 of 1 ☐

POLICY NUMBER: 11GPP2056800

COMMERCIAL GENERAL LIABILITY
CG 21 53 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Description of Designated Ongoing Operation(s):**

ALL OPERATIONS OF THE PROJECT OWNER, WITH EXCEPTION TO THEIR CAPACITY
AS PROJECT OWNER, NAMED INSURED, OR ADDITIONAL INSURED AS RESPECTS TO
CONSTRUCTION OPATIONS INSURED BY THIS POLICY.

**Specified Location (If Applicable):**

THE EMPIRE CITY CASINO AT YONKERS RACEWAY, TISHMAN PROJECT NUMBER
C-0199.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

CG 21 53 01 96                    Copyright, Insurance Services Office, Inc., 1994                    Page 1 of 1  ☐

COMMERCIAL GENERAL LIABILITY
CG 21 65 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
## WITH A BUILDING HEATING EQUIPMENT EXCEPTION
## AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., **Exclusions of Section I – Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

f.  Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for

any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 65 09 99

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1  ☐

PRODUCER COPY

COMMERCIAL GENERAL LIABILITY
CG 21 70 11 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

POLICY NUMBER:  11GPP2056800

COMMERCIAL GENERAL LIABILITY
CG 22 74 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Designated Contract Or Agreement:
ANY PERSON OR ORGANIZATION FOR WHOM THE NAMED INSURED HAS AGREED BY
WRITTEN CONTRACT TO ASSUME SUCH LIABILITY.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

CG 22 74 10 01

© ISO Properties, Inc., 2001
PRODUCER COPY

Page 1 of 2

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

    (i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

    (ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to Section **I** - **Supplementary Payments - Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

    a. Agrees in writing to:

        (1) Cooperate with us in the investigation, settlement or defense of the "suit";

        (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        (3) Notify any other insurer whose coverage is available to the indemnitee; and

        (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    b. Provides us with written authorization to:

        (1) Obtain records and other information related to the "suit"; and

        (2) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

© ISO Properties, Inc., 2001
PRODUCER COPY
CG 22 74 10 01    ☐

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph 3. below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc., 1997

PRODUCER COPY

POLICY NUMBER: 11GPP2056800

COMMERCIAL GENERAL LIABILITY
CG 24 04 10 93

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ANY PERSON OR ORGANIZATION FOR WHOM THE NAMED INSURED HAS AGREED BY WRITTEN CONTRACT TO FURNISH THIS WAIVER.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV — COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

     Copyright, Insurance Services Office, Inc., 1992         ☐

PRODUCER COPY

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

a. If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

   (1) General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

   (2) Products/Completed Operations Aggregate Limit;

   (3) Personal and Advertising Injury Limit;

   (4) Each Occurrence Limit; or

   (5) Fire Damage Limit

   is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

b. When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgments or settlements:

   (1) We will notify the first Named Insured, in writing, as soon as practicable, that:

      (a) Such a limit has actually been used up; and

      (b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

   (2) We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

   (3) The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2) above.

The duty of the first Named Insured to reimburse us will begin on:

   (1) The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a. above; or

   (2) The date on which we sent notice in accordance with paragraph b.(1) above, if we did not send notice in accordance with paragraph a. above.

d. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

Copyright, Insurance Services Office, Inc., 1991

PRODUCER COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PRODUCTS-COMPLETED OPERATIONS HAZARD EXTENSION PERIOD ENDORSEMENT

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  This endorsement only applies to damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" covered under the policy to which this endorsement is attached. This endorsement is subject to all the definitions, terms, limitations, exclusions and conditions of the policy and the provisions contained in this endorsement.

B.  The following definition is added to the policy:
"Products-Completed Operations Hazard Extension Period" means the period of time shown in the Products-Completed Operations Hazard Extension Period Schedule below.

### Products-Completed Operations Hazard Extension Period Schedule

Period of Time: From: ___April 1, 2007___ to ___April 1, 2012___

C.  The policy period shown in the Declarations is extended for the "Products-Completed Operations Hazard Extension Period". The "Products-Completed Operations Hazard Extension Period" will be deemed to be part of the policy period for purposes of determining the Limits of Insurance.

D.  The Products-Completed Operations Hazard Aggregate Limit, subject to the Each Occurrence Limit, applicable during the policy period is the most we will pay under Coverage A for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" during the "Products-Completed Operations Hazard Extension Period".

E.  This endorsement does not reinstate or increase the Products-Completed Operations Hazard Aggregate Limit. The Products-Completed Operations Hazard Aggregate Limit for the "Products-Completed Operations Hazard Extension Period" shall be a part of, and not in addition to the Products-Completed Operations Hazard Aggregate Limit applicable during the policy period.

F.  The policy will automatically expire at the end of "Products-Completed Operations Hazard Extension Period". No notice of non-renewal will be given.

All other terms and conditions of this Policy remain unchanged.

Issued By: ARCH INSURANCE COMPANY

Endorsement Number:

Policy Number: 11GPP2056800

Named Insured: TISHMAN CONSTRUCTION CORPORATION OF NEW YORK

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

Endorsement Effective Date:

*Ralph E. Townsend III*

President

# EXHIBIT

# 2

(KZ)

-------------------------------------------------

*In the Matter of the Claim of*

**JANE HAZEL and
NEIL HAZEL**

- *against* -

**THE STATE OF NEW YORK**

-------------------------------------------------

RECEIVED

JAN 0 4 2007

BY
CLAIMS BUREAU
NEW YORK DISTRICT

RECEIVED
NYS OFFICE OF THE

JAN 0 2 2007

ATTORNEY GENERAL
LITIGATION BUREAU

Loft
OGS
RWB
West
West

TO:   **THE STATE OF NEW YORK
C/O HONORABLE ELIOT SPITZER
ATTORNEY GENERAL FOR THE STATE OF NEW YORK
STATE CAPITOL
ALBANY, NEW YORK**

**COURT OF CLAIMS
P.O. BOX 7344
CAPITOL STATION
ALBANY, NEW YORK**

OAG : 07-05159
FILD CT
SRVD AG   1/2/07

RECEIVED

JAN 10 2007

NYS OFFICE OF THE ATTORNEY GENERAL
WESTCHESTER REGIONAL OFFICE

S I R S :

PLEASE TAKE NOTICE, that the claimants herein intend to file claim against **THE STATE OF NEW YORK** as follows:

1.  **Name and post office address of the claimants are as follows:**

CLAIMANTS:

JANE HAZEL and NEIL HAZEL

2.  **The Nature of Claim:**

Claimant, **JANE HAZEL** asserts an action for personal injuries she sustained as a result of within occurrence in which he was caused injury due to the negligence of The State of New York, its agents, servants and/or employees, and in particular the negligence of the State Lottery Division, the Office of General Services, and the New York State Racing and Wagering Board.

Claimant, **NEIL HAZEL** asserts a claim for loss of services.

3.  **The time when, the place where and the manner in which the incident occurred:**

The accident occurred on October 22, 2006, at approximately 8 P.M. at the exit of Empire City Gaming Casino at Yonkers' raceway.   The Claimant, JANE HAZEL was a lawful patron

of Empire Gaming Casino, and while attempting to exit the premises, she was caused to sustain serious personal injuries due to the negligence of the STATE OF NEW YORK, its agents, servants, and employees.

The **STATE OF NEW YORK**, individually and by and through its agents, servants and/or employees was negligent, careless and reckless in the ownership, operation, maintenance, control, supervision and/or management of said gaming casino; in its negligent, careless and/or reckless hiring, training, supervision, and/or retention of construction personnel, their servants, agents and/or employees; in failing to properly supervise and ensure the safety of patrons on said construction site; in failing to take the necessary steps and precautions to ensure the safety of the claimant; in negligently violating all statues, regulations, and ordinances made in and provided in like instances; in negligently failing to properly supervise the construction personnel; in failing to take the necessary precautions and measures which could have and should have ensured the safety of the claimant; in permitting and allowing the claimant to be injured as a result of the respondent's negligence.

The **STATE OF NEW YORK** via its agents the NEW YORK STATE LOTTERY DIVISION , the NEW YORK STATE OFFICE OF GENERAL SERVICES and the NEW YORK STATE RACING AND WAGERING BOARD allowed Empire City Gaming at Yonkers Raceway to open its business to the general public when it knew, or should have known that severe and serious violations, including, but not limited to: unfinished construction sites; obstructions of sidewalks, entrances and exits; and improper lighting existed in violation of all rules, ordinances and regulations then and there existing. Further, it is alleged that emergency exits were blocked and emergency lighting was not working. The NEW YORK STATE OFFICE OF GENERAL SERVICES issued a temporary certificate of occupancy prior to examining and inspecting the premises. Annexed hereto as *Exhibit "A"* is a photocopy of the accident site.

4. **The items of damage and injuries:**

Claimant, **JANE HAZEL** sustained severe personal injuries, including but not limited to multiple fractures of the wrist, head injuries, a concussion and hearing loss. The full extent and

severity of this claimant's injuries and all special damages resulting therefrom are unknown at the present time, including but not limited to medical expenses and lost earnings. (Annexed hereto as *Exhibit "B"* is a photo copy of our claimant.

Claimant, **NEIL HAZEL**, asserts a claim for loss of services and companionship of the aforesaid injured claimant.

The undersigned therefore presents this claim and demands the sum of Ten Million ($10,000,000) Dollars (for **JANE HAZEL**) and Two Hundred Fifty Thousand ($250,000) Dollars (for **NEIL HAZEL** ) as adjustment and payment, and advises you that unless same is adjusted and paid within the time provided by law from the date of its presentation to you, it is the intention of the undersigned to commence action thereon.

Dated:         New York, New York
               December 27, 2006


                              _____
                              JANE HAZEL
                              By: RICHARD A. DIENST


                              _____
                              NEIL HAZEL
                              By: RICHARD A. DIENST



LAW OFFICES OF RICHARD A. DIENST
Attorneys for Claimants
233 Broadway
New York, New York 10279
(212) 406-1700
Our File No.:M5

## VERIFICATION

RICHARD A. DIENST, an attorney, admitted to practice in the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

That I am a member at the LAW OFFICES OF RICHARD A. DIENST, the attorneys for the plaintiff in the above-entitled action.

That your deponent has read the foregoing and knows the contents thereof, and that the same is true to his/her own knowledge, except as to the matters therein stated to be alleged, upon information and belief, and as to those matters he/she believes it to be true.

That the source of the deponent's information are investigation and records in the files.

That the reason why the verification is made by deponent and not by the plaintiff is that the Claimants are not residents within the County where deponent maintains his office.

Deponent affirms that the foregoing statements are true under the penalties of perjury.

Dated:    New York, New York
          December 27, 2006

                                        RICHARD A. DIENST





**Gallagher Bassett of New York, Inc.**

July 30, 2007

Arch Insurance Co
245 Park Ave, 32 nd Fl
New York, NY  10167

Attn: Mark Reyes

<u>**CERTIFIED RETURN RECEIPT REQUESTED**</u>
<u>7002 3150 0002 0121 7735</u>

| | | |
|---|---|---|
| RE: | Claimant: | **Jane Hazel** |
| | Our Client | **Yonkers Racing Corp** |
| | Date of Loss: | **10/22/06** |
| | File No.: | **000746-000398-GB-01** |
| | Your Insured | **Tishman Construction Corp** |

Dear Mr. Reyes

Gallagher Bassett is the authorized claim representative for  Yonkers Raceway, Yonkers Raceway Management  and Yonkers Racing Corp.

On October 22, 2006 the claimant had tripped and fell on construction debris near the bus entrance to the Clubhouse. The claimant was taken by ambulance to Lawrence Hospital, by the EMS stationed at the insured location. The claimant did not complete an incident report, but the insured di contact Empress Ambulance Service  and  the claimant transportation was confirmed. To date we have not received any injury information pertaining to the claimant.

Since Arch Insurance Co is the General Liability insurance carrier for Tishman Construction we are placing your firm on notice of this claim.

Should you have any questions please feel free to call the undersigned at 631-694-7073 ext. 258.  I am in the office from 8:30 a.m. to 4:30 p.m. Monday to Friday.

Sincerely

Rick Folwark
Sr. Claims Representative

CC: Dan O'Leary
333 W. Wacker Drive, Suite 3000
Chicago, IL  60606

One Huntington Quadrangle Suite 4N01
Melville NY 11747
631-694-7073 ext. 258
FAX: 866-620-7928